IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Criminal No. 3:15-CR-233-D |
| VS. | § | |
| | § | |
| GROVER CLENDON ELROD, JR., | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM OPINION
AND ORDER

Defendant Grover Clendon Elrod, Jr. ("Elrod") moves to dismiss the indictment, for disclosure of confidential informant, and to suppress unlawfully obtained evidence. For the following reasons, the court denies the motions.

I

The court turns first to Elrod's motion to dismiss the indictment.

A

The indictment charges Elrod with the offense of felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). It also charges Elrod with a "violation of" 18 U.S.C. § 924(e), which essentially notifies him that, if he is convicted under § 922(g)(1), the government intends to seek an Armed Career Criminal enhancement under 18 U.S.C. § 924(e).

Elrod moves to dismiss the indictment, stating that the motion is brought under Fed. R. Crim. P. 12(a)(3)(A) and 12(a)(3)(B). The court will assume that he intended to cite Rule

12(b)(3)(B). Elrod maintains that although the search warrant pursuant to which his residence was searched alleges that the firearm he allegedly possessed had been "shipped or transported in interstate or foreign commerce," the indictment "allege[s] mere possession of such weapon," includes the words "interstate and foreign" to modify "commerce" in respect to the alleged "possession," contrary to § 922(g)'s construction, which makes it an offense "to possess in or affecting commerce, any firearm or ammunition," and alleges facts that show only *intrastate* commerce. D. Br. 4-5. Elrod also contends that a § 922(g) possession offense does not include interstate or foreign commerce, and, at least since the Supreme Court's decision in *United States v. Morrison*, 529 U.S. 598 (2000), the "possession" offense in § 922(g) is facially unconstitutional. Finally, Elrod posits that the residual clause of 18 U.S.C. § 924(e)(2)(B) is unconstitutionally void for vagueness because it does not sufficiently define the term "crime of violence," as the Supreme Court held in *Johnson v. United States*, ___ U.S. ___, 135 S.Ct. 2551 (2015).

B

18 U.S.C. § 922(g)(1) makes it unlawful for any person who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year "to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." "To establish a violation of § 922(g)(1) [based on possession of a firearm], the government must prove three elements beyond a reasonable doubt: (1) that the defendant previously had been convicted of a felony; (2) that

he possessed a firearm; and (3) that the firearm traveled in or affected interstate commerce." *United States v. Broadnax*, 601 F.3d 336, 341 (5th Cir. 2010) (quoting *United States v. Guidry*, 406 F.3d 314, 318 (5th Cir. 2005)) (internal quotation marks omitted).

To the extent Elrod contends the indictment insufficiently charges him with violating § 922(g)(1), the court disagrees. An indictment must "allege each essential element of the offense charged so as to enable the accused to prepare his defense and to allow the accused to invoke the double jeopardy clause in any subsequent proceeding." *United States v. Lawrence*, 727 F.3d 386, 397 (5th Cir. 2013) (quoting *United States v. Morrow*, 177 F.3d 272, 296 (5th Cir. 1999)). "Thus, an indictment is sufficient if it 'contains the elements of the offense charged and fairly informs the defendant of the charge against which he must defend.'" *Id.* (quoting *United States v. Fuller*, 974 F.2d 1474, 1480 (5th Cir. 1992)). The indictment in this case charges that Elrod, "having been convicted of a crime punishable by imprisonment for a term exceeding one year, did knowingly and unlawfully possess in and affecting interstate and foreign commerce a firearm, to wit [specifying firearm]." Indictment 1. The indictment is therefore sufficient to charge each essential element of the offense charged and to enable Elrod to prepare his defense.

To the extent Elrod challenges the constitutionality of a § 922(g)(1) "possession" offense, this argument lacks force. *See United States v. Daugherty*, 264 F.3d 513, 518 (5th Cir. 2001) (rejecting constitutional challenge to § 922(g) "because 'the constitutionality of § 922(g) is not open to question,'" and noting that *Morrison* does not "undermine[] the constitutionality of § 922(g)." (citations omitted)).

The government responds to Elrod's arguments regarding the effect of the Supreme Court's recent decision in *Johnson v. United States* on the residual clause of 18 U.S.C. § 924(e)(2)(B) by "agree[ing] with Elrod that his status as an armed career criminal may have to be reexamined." P. Br. 4. But the government also contends that this issue will not be ripe for determination unless Elrod is convicted and it becomes necessary to decide whether Elrod is subject to a mandatory minimum sentence under § 924(e). The court agrees with the government that Elrod's arguments concerning § 924(e) are premature and can be addressed if he is convicted and the applicability of § 924(e) becomes an issue at sentencing.

Accordingly, Elrod's motion to dismiss the indictment is denied.

II

Elrod also moves the court to order the government to disclose the identities of two confidential informants who provided information in support of the government's application for the warrant to search Elrod's residence. He maintains that he needs this information in support of his contemporaneously filed motion to suppress.

A

The disclosure of an informant's identity is governed by a balancing test. The public's interest in protecting the free flow of information and the informants' safety and security must be weighed against the defendant's right to prepare a defense. *Roviaro v. United States*, 353 U.S. 53, 62 (1957). The privilege against disclosing informants is limited when it is unfair to the defendant. If the information will not reveal the identity of an informant, or the informant's identity is relevant to the defense of the accused, the privilege

must give way. *Id*. at 60-61.

In applying *Roviaro* the Fifth Circuit has established a three-part test to determine the applicability of the informant's privilege. *See United States v. De Los Santos*, 810 F.2d 1326, 1331 (5th Cir. 1987). The court must first consider the level of the informant's participation in the criminal activity. The greater the informant's participation, the greater the appropriateness of disclosure. *Id*. Second, the court must determine the extent to which disclosure will assist the defense of the accused. Disclosure is not warranted by "'[m]ere conjecture or supposition about the possible relevancy of the informant's testimony.'" *Id*. (quoting *United States v. Gonzales*, 606 F.2d 70, 75 (5th Cir. 1979)). Third, the court must also evaluate the government's interest in maintaining the informant's anonymity. The safety of the informant and the informant's future usefulness to authorities are the principal criteria to be considered by the court in this context. *Id*.

B

In Elrod's case, the informants' level of participation weighs against disclosure. According to the government, the confidential informants (referred to in the search warrant affidavit as CW1 and CW2) had no involvement in the crime whatsoever; they were mere tipsters. They did not supply the firearms or ammunition to Elrod, and they are not prohibited persons under 18 U.S.C. § 922(g). The Fifth Circuit has "determined in countless cases that '*Roviaro* does not require the disclosure of the identities of "mere tipsters."'" *United States v. Cooper*, 949 F.2d 737, 749 (5th Cir. 1991) (quoting *United States v. Fryar*, 867 F.2d 850, 856 (5th Cir. 1989)); *see also United States v. Clark*, 482 F.2d 103, 104 (5th

Cir. 1973) ("We have held that where the evidence shows that an informer is nothing more than an informer and does not participate in the transaction, no disclosure of his identity is required." (citing cases)).

Elrod contends that disclosure of the informants' identities would be useful to his defense because their identities are "relevant to a fair determination of the Motion to Suppress, which [Elrod] has filed in this cause." D. Br. 5. But he has failed to make any showing that the informants' identities would significantly aid him in establishing a defense or prevailing on his motion to suppress. According to the government, at trial, the primary evidence that Elrod unlawfully possessed the firearm charged in the indictment will come from the results of the search warrant and Elrod's statements at the time of the search. "Cross-examining the [informants] that spurred the search warrant would not in any way make it less likely that Elrod unlawfully possessed that firearm." P. Br. 7-8. And to the extent Elrod contends that the informants' identities are relevant to a fair determination of the motion to suppress, where a confidential informant's "information only went to establishing probable cause for searching [a defendant's] home, his credibility cannot be put at issue . . . because 'the magistrate is concerned, not with whether the informant lied, but with whether the affiant is truthful in his recitation of what he was told.'" *United States v. Davis*, 443 Fed. Appx. 9, 13 (5th Cir. 2011) (per curiam) (quoting *McCray v. Illinois*, 386 U.S. 300, 307 (1967)). The second factor thus does not weigh in favor of disclosure.

Regarding the third factor, the government has established a substantial interest in maintaining the anonymity of the confidential informants. The government has legitimate

concerns about their safety because Elrod was apprehended with a stockpile of weapons and a small arsenal of ammunition; his brother, also a convicted felon, has been at every hearing thus far in the case; and Elrod himself has made veiled threats against the informants, stating, as the search warrant was being executed, that "somebody f---ing ratted me out," and demanding at his initial appearance that the case agent reveal the identities of the individuals that had provided information about him and appearing agitated when the agent refused. P. Br. 10.

The government recognizes that if it decides to call the confidential informants as witnesses at trial, "Elrod would obviously know their identities." *Id.* at 8. Because the balancing test required by *Roviaro* and *De Los Santos* does not weigh in favor of disclosure, Elrod's motion is denied. Of course, if the government intends to call either or both confidential informants as witnesses at trial, it must include them on its witness list.[1]

III

Finally, Elrod moves under Rule 12(a)(3)(A) and 12(a)(3)(B) to suppress unlawfully obtained evidence, contending that his detention, the search of his residence, the seizure of his property, and/or his arrest violated the Fourth and Fifth Amendments. The court will assume that Elrod intended to cite Rule 12(b)(3)(C).

---

[1]Elrod requests that, if the court does not order disclosure, it conduct an *in camera* proceeding to examine and review any information provided by the confidential witnesses. He also requests that the court make findings of fact and conclusions of law based upon such proceedings so that they may be reviewed on appeal, if necessary. Because the court concludes that Elrod has failed to demonstrate that any of the three elements of the *Roviaro* balancing test is in his favor, the court denies these requests.

A

Elrod's residence was searched on May 6, 2015 pursuant to a search warrant issued by a United States Magistrate Judge of this court. Elrod was arrested at the scene following the search. The following day, the magistrate judge issued a warrant for Elrod's arrest, finding probable cause to believe he had violated 18 U.S.C. § 922(g)(1).

In reviewing a search pursuant to a warrant, the court engages in a two-step inquiry. *United States v. Newton*, 2010 WL 1460052, at *7 (N.D. Tex. Apr. 13, 2010) (Fitzwater, C.J.) (citing *United States v. Payne*, 341 F.3d 393, 399 (5th Cir. 2003)), *aff'd*, 463 Fed. Appx. 462 (5th Cir. 2012). First, the court determines whether the good-faith exception to the exclusionary rule applies. *Payne*, 341 F.3d at 399 (citing *United States v. Pena-Rodriguez*, 110 F.3d 1120, 1129-30 (5th Cir. 1997)). If it does, the court "need not reach the question of probable cause for the warrant unless it presents a 'novel question of law,' resolution of which is 'necessary to guide future action by law enforcement officers and magistrates.'" *Id*. (quoting *Pena-Rodriguez*, 110 F.3d at 1129-30). Second, if the good-faith exception does not apply, the court proceeds to a determination of whether "the magistrate had a substantial basis for . . . concluding that probable cause existed." *Pena-Rodriguez,* 110 F.3d at 1129-30 (citation and internal quotation marks omitted).

"Under the good-faith exception, evidence obtained during the execution of a warrant later determined to be deficient is admissible nonetheless, so long as the executing officers' reliance on the warrant was objectively reasonable and in good faith." *Payne*, 341 F.3d at 399 (citing *United States v. Leon*, 468 U.S. 897, 921-25 (1984)). "The 'good faith inquiry

is confined to the objectively ascertainable question whether a reasonably well-trained officer would have known that the search was illegal despite the magistrate's authorization.'" *United States v. Pope*, 467 F.3d 912, 916 (5th Cir. 2006) (quoting *Leon*, 468 U.S. at 922 n.23). Normally, the issuance of a warrant by a magistrate suffices to establish an officer's good faith. *Messerschmidt v. Millender*, ___U.S. ___, 132 S.Ct. 1235, 1245 (2012). But the good-faith exception does not apply in any one or more of the following four circumstances: (1) the magistrate issuing the warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for reckless disregard of the truth; (2) the issuing magistrate wholly abandoned her judicial role; (3) the warrant is based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; or (4) the warrant is so facially deficient in failing to particularize the place to be searched or the things to be seized that the executing officers cannot reasonably presume it to be valid. *See Leon*, 468 U.S. at 923; *United States v. Triplett*, 684 F.3d 500, 504 (5th Cir. 2012).

B

In Elrod's motion, he does not address the good-faith exception to the exclusionary rule.[2] So far as the court can determine, after discussing the procedural history, background facts, and general Fourth and Fifth Amendment principles, Elrod advances a single ground for suppressing this detention, the search and seizure, and his arrest: Special Agent Nathan

[2]*See* P. Br. 9-10 ("[I]t is plain that agents and officers executed the search warrant in good faith—a threshold legal concept that Elrod completely ignores in his motion.").

Garber's ("Agent Garber's") affidavit[3] is insufficient to establish probable cause that a violation of § 922(g) has or is occurring, and no such facts are supported by the affidavit. Elrod maintains that subsection (a) of Attachment B to Agent Garber's affidavit states that the purported evidence to be found is firearms and ammunition, but the belief that firearms or ammunition will be present in the future at a particular place does not remotely indicate a violation of § 922(g) or constitute evidence of a § 922(g) offense; although possession of particular firearms and ammunition by a convicted felon might suffice to show probable cause that a § 922(g) offense had been committed, there were also "antique firearms" present at his residence, "antique firearms" are not included, and entire categories of firearms are statutorily exempted; therefore, absent the identity of a specific person alleged to be a convicted felon, and a sworn, factual assertion that the person possessed the requisite firearm or ammunition, there is no qualified showing of a violation of § 922(g); accordingly, everything in subsection (a) of Attachment B following the words "Firearms and ammunition" is non-specific and does not constitute evidence of a § 922(g) offense, and nothing in subsections (b) and (c) of Attachment B constitutes evidence of a § 922(g) offense.

Although Elrod does not cite *Leon*,[4] because his reasoning relates to the third *Leon*

---

[3]In his motion, Elrod actually cites parts of Attachment B to Exhibit D to his motion. *See* D. Mot. Suppress 6-7. Attachment B is an attachment to Agent Garber's "Affidavit in Support of Search Warrant."

[4]Moreover, although Elrod states generally that a search warrant affidavit must provide the magistrate with a substantial basis for determining the existence of probable

exception, the court will address whether that exception applies.[5] The third *Leon* exception is triggered when the warrant is based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable. In the Fifth Circuit, this exception has been succinctly stated in terms of whether the affidavit was "bare bones." *See, e.g., United States v. Craig*, 861 F.2d 818, 821 (5th Cir. 1988) (referring to the so-called "bare bones" affidavit exception of *Leon*). "A bare bones affidavit is one that contains wholly conclusional statements about an affiant's knowledge and beliefs." *United States v. Kleinkauf*, 487 Fed. Appx. 836, 838 (5th Cir. 2012) (per curiam) (citing *United States v. Pope*, 467 F.3d 912, 920 (5th Cir. 2006)). "Whether an affidavit is a bare bones affidavit is determined under a totality of the circumstances." *United States v. Gayfield*, 609 Fed. Appx. 829, 829 (5th Cir. 2015) (per curiam) (citing *United States v. Fisher*, 22 F.3d 574, 578 (5th Cir. 1994)).

Agent Garber's affidavit presents the following "Facts in Support of Probable Cause":

(1) on April 28, 2015—just days before the search warrant was executed—cooperating witness number one ("CW1") contacted the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") in an attempt to provide information about a

---

cause, he does not argue that, in this case, the warrant was based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable. *See Leon*, 468 U.S. at 923.

[5]In its response, the government addresses the other three *Leon* exceptions as well. Because Elrod does not appear to address the other *Leon* exceptions either, and because the court concludes that it is clear that no other exception applies, the court will not address any other exception in detail.

convicted felon that CW1 knew was in possession of multiple firearms; CW1 advised Agent Garber, an ATF special agent, that CW1 would meet with him and would like to bring cooperating witness number two ("CW2"), who would have additional information, including information that corroborated CW1's information; Agent Garber met with the cooperating witnesses on April 29, 2015, and they provided him information about Elrod, whom Agent Garber identified in his affidavit by race, gender, and year of birth;

(2) CW1 and CW2 advised that, on March 29, 2015, they had been in Elrod's home (which the affidavit identified by type of structure and specific address) and had observed him shooting firearms that he had retrieved from a gun safe kept in his bedroom; both advised that there were multiple firearms at the residence, including a 1911 .45 caliber pistol, an AR15 rifle, a Savage rifle, a .25 caliber pistol, and a .40 caliber Taurus pistol; CW1 and CW2 advised that the residence was situated on approximately 25 acres of land and was partially fenced with an electric gate at the property entrance;

(3) on April 7, 2015 CW2 reported going again to Elrod's residence to retrieve the .40 caliber Taurus pistol that Elrod had given to CW2, and, while there, CW2 saw a hunting rifle at the back door of the trailer; CW2 said the rifle was always there because Elrod had a deer feeder on the property and used the rifle to shoot deer, hogs, and bobcats;

(4) CW2 advised that he/she had been to Elrod's residence on at least four occasions and had seen firearms at the residence on each occasion;

(5) CW1 and CW2 said that there were surveillance cameras on the property that Elrod monitored from a television monitor in the living room of the trailer; one camera was

positioned to monitor the deer feeder, but the other two cameras monitor and recorded the area around the trailer; according to CW1 and CW2, Elrod rewound the surveillance recordings when he returned home to see if anyone had been on the property;

(6) CW1 and CW2 both advised Agent Garber that Elrod reloaded his own ammunition and had a reloading machine; both knew that despite Elrod's being a convicted felon and being prohibited from owning firearms, he had purchased them; and Elrod had bragged to both CW1 and CW2 about paying $3,000 for an AR15 rifle;

(7) Agent Garber knew that Elrod was a convicted felon, having been convicted in 1994 in federal court for possession of an unregistered short barrel shotgun, and he was therefore prohibited under 18 U.S.C. § 922(g)(1) from possessing a firearm or ammunition;

(8) CW1 and CW2 had corroborated each other's information, and neither had any known criminal history; based on this, Agent Garber felt that CW1 and CW2 were both reliable sources of information and that the information that they provided to him about Elrod was reliable;

(9) based on Agent Garber's training and experience (his affidavit specifies that he has been an ATF agent since December 2013, and he was employed as a police officer in Georgia for ten years, including over four years as a criminal investigator), Agent Garber knew that it was common for persons who maintained firearms in their homes to keep them for long periods of time;

(10) based on his training and experience, he also knew that it was common for persons who maintained firearms in their homes to have ammunition, parts for firearms, and

firearm accessories;

(11) Agent Garber consulted with an ATF Interstate Nexus expert and was advised that the Savage rifle was not manufactured in the state of Texas and therefore had affected interstate or foreign commerce by being in the state of Texas; and

(12) based on this information, Agent Garber believed that there was probable cause to believe that Elrod was violating 18 U.S.C. § 922(g)(1).

Garber Aff. ¶¶ 1-11 & conclusion.

Agent Garber's affidavit is not so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.[6] He purported to rely on contemporary eyewitness information provided by cooperating witnesses whom he deemed to be credible sources, who lacked known criminal records, and who corroborated each other; the cooperating witnesses reported personally observing Elrod shooting firearms at his residence

---

[6]In his recitation of facts, Elrod also contends that "there was never any corroboration of CW1 and CW2's allegations," and that, to the contrary, Agent Garber never verified a statement in his April 30, 2015 report that indicated that Elrod was possibly growing marijuana at his house using a hydroponic grow system. D. Br. 4. But the affidavit Agent Garber submitted in support of the search warrant application notes substantial corroboration, including that the cooperating witnesses stated that Elrod was a convicted felon (a fact Agent Garber independently verified), and that they provided an address where Elrod was storing his firearms, described the residence as a "double wide mobile home" (a fact Agent Garber verified through surveillance and by taking pictures of the residence), and provided information similar to one another, leading Agent Garber to conclude that both were credible. P. Br. 8. Moreover, Agent Garber researched the cooperating witnesses and concluded that neither had any known criminal history, and the information they provided was detailed and timely. As to the statement regarding Elrod's possibly growing marijuana at his residence, it is unclear who made this statement, but, in any event, nothing in Agent Garber's affidavit or the warrant application mentions this fact, and, it is therefore irrelevant to an analysis of any of the *Leon* factors.

and identified certain specific firearms by model or caliber; they reported that, despite Elrod's status as a convicted felon, he had purchased firearms and reloaded his own ammunition with a reloading machine located at his residence; one cooperating witness (CW2) reported having been to Elrod's residence four separate times, each time observing that firearms were present, having seen a hunting rifle at the residence by the back door, and having been given a .40 caliber pistol by Elrod; and Agent Garber independently verified that Elrod was a convicted felon, and that at least one firearm—a Savage rifle—had traveled in interstate or foreign commerce. In these and other respects recounted above, the affidavit set forth specific facts that showed *what* Agent Garber and the cooperating witnesses knew, and *how* they knew it, and it covered all the elements necessary to establish probable cause to believe that Elrod had violated 18 U.S.C. § 922(g)(1). It is not a bare bones affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.

Because the good-faith exception applies, and this case does not present any novel legal questions, the court need not reach whether the warrant was supported by probable cause. *See, e.g., Craig*, 861 F.2d at 821 ("[S]ince we decide that the evidence is admissible under *Leon*, we do not reach, and express no view upon, the issue of whether the warrant was supported by probable cause").

Accordingly, the court denies Elrod's motion to suppress unlawfully obtained evidence.

* * *

Elrod's motions to dismiss indictment, for disclosure of confidential informant, and to suppress unlawfully obtained evidence are denied.

**SO ORDERED**.

September 8, 2015.

SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE